# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v ) | No. 3:17-cr-00079 |
| ) | CHIEF JUDGE CRENSHAW |
| BERNARDO MATEO-LUCAS ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On February 8, 2017, Bernardo Mateo-Lucas, while driving a 2012 Toyota Sienna on Interstate 40 in Hickman County, Tennessee, was stopped by Tennessee Highway Patrol Trooper Jeremy Miller for alleged traffic violations. That traffic stop resulted in the discovery of 11 passengers in the minivan, none of whom were lawful residents, or otherwise entitled to be in the United States. It also resulted in Mateo-Lucas being indicted for transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). On July 11, 2018, a jury found him guilty of that charge, and his presently pending Motion for Judgment of Acquittal (Doc. No. 122) pursuant to Rule 29(c)(1) of the Federal Rules of Criminal Procedure followed.

In determining whether a motion for a judgment of acquittal should be granted, "[t]he relevant inquiry is whether, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Fisher, 648 F.3d 442, 450 (6th Cir. 2011) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "Under the Jackson v. Virginia standard, a reviewing court does 'not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury.'" Id. (citation omitted). "'Substantial and competent circumstantial evidence by itself may support a verdict and need not remove every reasonable

hypothesis except that of guilt.'" Id. (quoting United States v. Lee, 359 F.3d 412, 418 (6th Cir. 2004)).

Under the governing statute, the offense of transporting illegal aliens is committed by any person who,

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

8 U.S.C. § 1324(a)(1)(A)(ii). "To sustain a conviction under this section, the government must prove that (1) the defendant transported or attempted to transport an alien within the United States, (2) the alien was in the United States illegally, (3) the defendant knew of or recklessly disregarded the fact that the alien was in the United States illegally, and (4) the defendant acted willfully in furtherance of the alien's violation of the law." United States v. Silveus, 542 F.3d 993, 1002 (3d Cir. 2008)(collecting cases)

Mateo-Lucas's quarrel is only with the amount of proof given to the jury in relation to the last element. The entirety of his argument is as follows:

> The proof at trial, relevant to the [last] element, was that the defendant began transporting his passengers in Texarkana, Texas. The jury heard from four of the people riding with the defendant [–] Rudy Francisco Caniz-Garcia, Diego Ajpop-Lux, Marina Ajcuc and Espectacion Galdamez-Lopez. Each of these people was traveling in order to reach family or work in the north. None described mistreatment at the hands of the defendant. In fact, Mr. Caniz-Garci and Mr. Ajpop-Lux recounted the provision of food, water and restroom breaks during their time with the defendant. It was clear from the testimony that the primary purpose of their transportation to was to find employment and family and not to escape prosecution or otherwise evade the law.
> To violate 1324(a)(1)(B) the transportation of the illegal aliens must have been "in furtherance of such violation of law." "[T]he mere transportation of a person known to be an alien is not sufficient to constitute a violation of the section." U.S. v. 1982 Ford Pick-Up, VIN 1FTDX15G7CKA31957, Texas Lic. No. VM-5394, 873 F.2d 947 (6th Cir., 1989) citing United States v. Moreno, 561 F.2d 1321, 1322

(9th Cir.1977).

(Doc. No. 122 at 2).

The problem with Mateo-Lucas's argument is two-fold. First, he neglects to consider that, on a Motion for Judgment of Acquittal, "all reasonable inferences are to be drawn in the government's favor," United States v. Coffee, 434 F.3d 887, 895 (6th Cir. 2006), and "[a]ll conflicts in the testimony are resolved in favor of the government." United States v. Geisen, 612 F.3d 471, 488 (6th Cir. 2010). Second, his reliance on 1982 Ford Pickup is misplaced because that case actually supports affirmance of the conviction in this case.

Turning to the latter point first, 1982 Ford Pickup was a civil case involving the forfeiture of two trucks. There, the Sixth Circuit rejected the Ninth Circuit's position espoused in Moreno, 561 F.2d at 1323, that focused on the effect of the act of transportation has upon an alien's illegal presence in favor of "focus[ing] on the intent of those persons accused of transporting illegal aliens." 873 F.2d at 951. "Accordingly, a person who knowingly gives an alien a ride to a homeless shelter may not be prosecuted under the above statute for transporting an illegal alien. In contrast, a person who knowingly smuggles illegal aliens across the country may properly be convicted thereunder." United States v. Stonefish, 402 F.3d 691, 695–96 (6th Cir. 2005) (citation omitted). With the proper focus being the intent of the person providing the transportation and not the effect of the transportation, no illegal intent was found to exist in 1982 Ford Pickup. To the contrary, the record indicated (1) defendants' actions were "quite innocent"; (2) "they made no attempt to hide their passengers or otherwise conceal the fact that they were illegal aliens"; (3) defendants "received no financial remuneration for helping their passengers move to Kentucky"; (4) the passengers were "friends, relatives and former co-workers of the [defendants who] sought transportation to Kentucky

in hopes of finding employment"; and (5) defendants "purpose was to promote the well-being of friends and relatives by helping them obtain employment."

Here, there was no evidence presented to the jury suggesting that Mateo-Lucas was engaged in such a benevolent purpose when he was stopped by Trooper Miller on I-40. Indeed, when the facts are construed in favor of the Government, the evidence suggests quite the opposite, or so a reasonable jury could find.

When stopped, Mateo Lucas was not driving his own vehicle. He was driving a minivan that was supposedly provided to him by a friend named "Bryan Casillas." As it turns out, this was an alias for his brother Sebastian, who had supplied Mateo-Lucas with the van. Mateo-Lucas also used that same van to transport illegal aliens in the immediate past. In December 2016 he was stopped by the Border Patrol in Needles, California, and given a warning tor transporting illegal aliens, and was stopped shortly thereafter again in Riverside, California while transporting six illegal aliens in the van.

Further, Mateo Lucas was not chauffeuring his passengers in style from one place to another. Instead, the 11 individuals were packed in a mini-van, with one lying on the rear floor board covered with a blanket, and four or five others unbelted, sitting or lying down in the rear of the van. Comfort breaks were few, with food and drink consisting of sandwiches and water purchased at gas stations.

Additionally, Mateo-Lucas admitted on tape to being paid $100 to transport the passengers from Texarkana, Texas to Nashville, Tennessee. While this might appear to be a paltry sum (and could have therefore been discounted by the jury as unbelievable), even the lack of proof of payment is not fatal where the evidence shows, as in this case, that the "only possible motive was monetary." Stonefish, 402 F.3d at 696. Besides, the jury heard testimony from at least two of the passengers

4

that their family paid money for transportation to the east coast, with a fair inference being either that Mateo-Lucas, or his brother who supplied the van, was paid that money.

Related to the last point, the passengers in the Sienna minivan did not know Mateo-Lucas, and he did not know them. This suggests that Mateo-Lucas was transporting the aliens for hire, and not for altruistic purposes. See United States v. Perez-Gonzalez, 307 F.3d 443, 448 (6th Cir. 2002) (listing as a factor whether defendant knew the aliens he was transporting); see also Stonefish, 402 F.3d at 697 (pointing to defendant's "concession . . . that there was no evidence that any of the illegal aliens were friends, co-workers, or companions" as suggestive that he considered his passengers "human cargo").

Finally "[t]he 'violation of law' to which [Section 1324(a)(1)(A)(ii)] refers is the illegal alien's continued illegal presence in the United States." Stonefish, 402 F.3d at 695-96 (citing 1982 Ford Pick–Up, 873 F.2d at 950 (6th Cir.1989)). Without doubt, there was more than sufficient evidence to establish Mateo-Lucas's unlawful intent, and that some of the passengers in the van may have been seeking employment does not magically transform his intent or the trip into a lawful one. See Perez-Gonzalez, 307 F.3d at 446 (upholding conviction even though "passengers were traveling in hopes of finding employment," because "they were also clearly attempting to 'evade the law'" and, "to the extent that any of these passengers were hoping to find employment, there is no indication that [defendant] knew of their hopes, and even if he did, this one factor alone would not outweigh the others"); United States v. De La Cruz, 703 F.3d 1193, 1199 (10th Cir. 2013) (citation omitted) ("Transportation furthers an alien's violation of the law if it 'will help, advance, or promote the alien's illegal entry or continued illegal presence in the United States.'" . . . . Thus, § 1324(a)(1)(A)(ii) proscribes, for example, transportation of an alien by friends or family to enable

5

the illegal alien to find work and/or evade authorities"); United States v. Goodreau, 38 F. App'x 369, 372 (9th Cir. 2002) (citation omitted) (observing that "transportation for one leg of illegal aliens' migration to locations within the United States . . . has a direct and substantial relationship to the furtherance of the aliens' illegal presence in the United States").

Accordingly, Mateo-Lucas's Motion for Judgment of Acquittal (Doc. No. 122) is **DENIED**. Sentencing is hereby scheduled for **November 30, 2018,** at 10:00 a.m.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE